1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAMONT H.,

                  Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

CASE NO. 3:22-CV-5880-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION DENYING BENEFITS

     Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Supplemental Security Income benefits (SSI) and Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court concludes that this matter must be affirmed.

## I. BACKGROUND

     Plaintiff filed applications for DIB and SSI on March 21, 2019 and April 10, 2020, respectively. Administrative Record (AR) 16. In both applications he alleged disability beginning February 1, 2019, which he later amended to September 26, 2019. *Id*. After his

applications were denied initially and upon reconsideration, he filed a written request for a hearing. *Id*. On September 22, 2021 an Administrative Law Judge (ALJ) held a hearing at which Plaintiff was represented and testified telephonically. *Id*.; AR 42-85. On October 13, 2021 the ALJ issued a written decision finding Plaintiff not disabled. AR 16-32. The Appeals Council declined Plaintiff's request for review making the ALJ's decision final. AR 1-3.

## II. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairments of: osteoarthritis of the knees and feet; degenerative disc disease of the lumbar spine; spinal stenosis; general anxiety disorder; major depressive disorder; and borderline personality disorder (20 CFR 404.1520(c) and 416.920(c)). AR 19.

The ALJ found the combination of Plaintiff's impairments do not meet or equal any Listed Impairment. *Id*.

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can: occasionally climb on ramps and stairs but should avoid climbing on ladders, ropes or scaffolds; occasionally be exposed to extreme cold temperatures and vibration; should avoid unprotected heights and occupations which would expose him to noise above a level three intensity level; understand, retain and carry out simple instructions with few workplace changes; avoid fast production rate pace work; engage in occasional decision making with respect to work related activities; avoid interaction with the public except for incidental contact; engage in occasional interaction with co-workers and supervisors but he should avoid group, team or tandem work activities. AR 23.

1  The ALJ found that a person of Plaintiff's age, with his education, work experience, and

2  RFC, could perform other jobs that exist in significant numbers in the national economy such as

3  Mail Sorter, Routing Clerk, and Retail Marker, and therefore would not be disabled. AR 30-31.

### III. STANDARD OF REVIEW

5  Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

6  social security benefits if the ALJ's findings are based on legal error or not supported by

7  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

9  Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

10  harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11  2008).

12  Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

13  Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

14  than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

15  only—such relevant evidence as a reasonable mind might accept as adequate to support a

16  conclusion." *Id.* (internal quotations omitted).

### IV. DISCUSSION

18  **A. Undisputed Findings**

19  Plaintiff fails to object to several key findings made by the ALJ, and has therefore waived

20  his right to do so. *See*, *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this

21  argument was not raised clearly and distinctly in the opening brief, it has been waived").

22  Nevertheless, a brief discussion of those findings is in order as they buttress the Court's ultimate

1  determination that the ALJ's evaluation of the disputed evidence was supported by substantial

2  evidence and free from harmful error.

3      1.  <u>The ALJ found Plaintiff to be less than fully credible.</u>

4         The ALJ found Plaintiff's statements about the intensity, persistence and functionally

5  limiting effects of his severe impairments were not fully substantiated by the objective medical

6  evidence and were inconsistent with many statements throughout the record to healthcare

7  providers about his actual activities of daily living. AR 23.

8         With respect to Plaintiff's alleged physical limitations, the ALJ noted that Plaintiff

9  claimed an on-the-job back injury prevents him from working because he has trouble lifting,

10  standing, laying, or walking. *Id*. Plaintiff testified that lower back pain radiates into his legs, and

11  he also experiences joint pain in his hands, shoulders, ankles and knees. *Id*. Plaintiff estimated he

12  can sit for two hours, stand for one to two hours, and walk for about twenty minutes before he

13  would have to change positions. AR 23-24. He testified that at most he can lift ten pounds and

14  that he uses a cane for stability. *Id*.

15         Although the ALJ found Plaintiff did have osteoarthritis of the knees and feet, and

16  degenerative disc disease of the lumbar spine as well as spinal stenosis, Plaintiff's treatment

17  notes indicated Plaintiff reported experiencing symptoms since youth, related to motorcycle and

18  car accidents, and that he lived on DIB for several years until he was "retrained" for automotive

19  and construction work—work he did until 2014 when he suffered a new back injury after falling

20  from a roof. AR 24 (citing AR 453, 1118). While imaging supported these diagnoses,

21  examinations generally revealed Plaintiff's back, hips, and knees were nontender, that he

22  demonstrated a smooth, symmetric, full range of motion, negative straight leg raise testing,

23  normal reflexes, 5/5 motor strength, and intact sensation in his lower extremities. *Id*. (citing AR

24  453). By late 2019 Plaintiff's doctors prescribed physical therapy and pool therapy for Plaintiff

1  to work on his core strength and posture, and Plaintiff reporting "taking medication for his back
2  as needed and doing fairly well." *Id*.

3       The ALJ found that in the first months of 2020 Plaintiff's pain management doctor said
4  he should continue with physical therapy and that he "did not need any shots" as Gabapentin
5  prescription was helping significantly with no side effects and Plaintiff was attending physical
6  therapy, which he felt was very helpful. AR 24-25. However, after contracting COVID-19 in late
7  2020 Plaintiff established care with a new team, and later underwent a lumbar diagnostic medial
8  branch and dorsal primary ramus nerve block in August 2021. AR 25.

9       The ALJ credited the functional limitations opined by Eduardo Faytong, PA-C (Faytong)
10  from January 2021 that Plaintiff could stand and walk six-hours and sit for seven hours in an
11  eight-hour workday; occasionally lift and carry up to twenty-five pounds and frequently lift and
12  carry up to ten pounds; push and pull in the "fair to good" range; and that all other functioning
13  was excellent. *Id*. The ALJ found Faytong's opinion was persuasive because it was supported by
14  the consultative examination Faytong performed on Plaintiff and was "generally consistent with
15  the rather benign treatment records" regarding Plaintiff's physical health. *Id*.

16       The ALJ also credited the opinions of state agency medical consultants Ruth Childs,
17  M.D. (Childs) and Louis Martin, M.D. (Martin) who opined that Plaintiff could perform a range
18  of light exertional work, including frequently performing postural activities; occasionally
19  climbing ladders, ropes or scaffolds; occasionally kneeling, crouching, crawling; but needed to
20  avoid concentrated exposure to vibration and hazards and extreme cold. AR 27-28. The ALJ
21  found these opinions were generally consistent with the medical evidence of record as well as
22  Plaintiff's activities of daily living. *Id*.

23

24

1    Regarding Plaintiff's mental health, the ALJ noted that Plaintiff claimed to suffer from

2    depression, "which causes low motivation and times when he will not get out of bed." AR 24. He

3    also reported anxiety, "which can be triggered by certain things on television or just knowing

4    that he has to go into a crowd." *Id*. As a result, Plaintiff said he often isolates, and due to

5    nightmares that interrupt his sleep he naps during the day. *Id*.

6    The ALJ's record review revealed that Plaintiff had, indeed, been diagnosed with several

7    mental illnesses, for which he was treated during the relevant period with cognitive behavioral

8    therapy, group therapy, and pharmaceuticals. AR 25. The ALJ noted remarks throughout

9    Plaintiff's treatment record of Plaintiff responding well to these therapies and discontinuing his

10   use of alcohol, though he did experience setbacks related to the COVID pandemic, family, and

11   finances. *Id*. (citing AR 488, 501, 554, 639, 909, 918, 966, 980, 1000). To be sure, Plaintiff

12   missed numerous medication management appointments in 2020, and by February 2021 he was

13   not taking any medication. AR 26 (citing AR 1002). However, after resuming his medication

14   Plaintiff reportedly improved again, and clinical findings through his date last insured indicated

15   he was cooperative, his affect and mood were normal, his judgment and insight were good, and

16   his cognitive functioning was intact *Id*. (citing AR 1043).

17   The ALJ also credited the state agency psychological consultants' opinions, including

18   Renee Eisenhauer, Ph.D. (Eisenhauer), and Jerry Gardner, Ph.D. (Gardner), who both opined that

19   Plaintiff's ability to understand, remember and carry out detailed instructions was moderately

20   limited, as was his ability to complete a normal workday/week; interact with the general public,

21   supervisors and co-workers, and; respond appropriately to changes in the work setting and in

22   setting realistic goals or making plans independently. AR 27-28, 125-127, 200-204.

23

24

1    The ALJ found these opinions were supported by detailed explanations and generally

2    consistent with Plaintiff's treatment records (which the ALJ found to be "generally benign") as

3    well as Plaintiff's self-reports to treatment providers indicating Plaintiff struggles with

4    depression and anxiety but reports having full custody of his children who live with him, living

5    also with his girlfriend and her two children, cleaning, shopping, and cooking for the family,

6    driving his girlfriend to and from work, and doing family activities such as taking the children

7    fishing and crabbing. *Id.*

8    Again, Plaintiff does not object to the ALJ's assessment of Faytong, Childs, Martin,

9    Eisenhauer or Gardner, nor does he object to the ALJ's determination that Plaintiff, himself, was

10    less than fully credible. *See generally*, Dkt. 9. Instead, Plaintiff objects to the ALJ's assessment

11    of three mental-health-related medical source opinions, and one lay witness statement.

12    **B. Plaintiff's Objections**

13    1.  Medical Objections

14       *a.  Medical Evidence Standard*

15    Under the revised regulations, ALJs "will not defer or give any specific evidentiary

16    weight, including controlling weight, to any medical opinion(s) or prior administrative medical

17    finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every

18    medical opinion or prior administrative medical findings in the record and evaluate each

19    opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416.1520(c)(a) and

20    416.920c(a). The two most important factors are the opinion's "supportability" and

21    "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

22    factors for a medical source's medical opinions or prior administrative medical findings in [their]

23    . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

24

1    "Supportability means the extent to which a medical source supports the medical opinion

2 by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

3 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1).

4 "Consistency means the extent to which a medical opinion is 'consistent … with the evidence

5 from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. §

6 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

7    *b. Justin Stamschror, M.D.*

8    On February 28, 2021, Justin Stamschror, M.D. (Stamschror), performed a consultative

9 psychiatric evaluation of Plaintiff over video. AR 946-947. Stramschror noted that Plaintiff

10 chiefly complained of PTSD, sleep apnea, and back, knee and ankle pain, and indicated these

11 conditions prevented him from "work, like general contracting, because I can't lift like I used to

12 anymore." AR 943. Stramschror stated that Plaintiff was "passively suicidal" and endorsed

13 "feeling restless, easily fatigued, irritable, and tense, and has difficulty concentrating and

14 sleeping due to excessive worry." *Id*. Plaintiff indicated he was fired from his last job because he

15 did not show up on time or do his assigned work. AR 945. He further told Stramschror his

16 schedule now consists of waking up "around 12 or 2" watching TV, bathing once a month, and

17 going to bed around 4am." *Id*.

18    Stramschror diagnosed Plaintiff with Alcohol Use Disorder, Antisocial Personality

19 Disorder, Unspecified Mood Disorder, and Unspecified Anxiety Disorder. AR 946. He opined

20 that Plaintiff's disorders were "unlikely treatable with medication management and

21 Psychotherapy" due to "low motivation and the fact that antisocial personality disorder

22 does not have an effective treatment". *Id*. Accordingly, Stramschror stated that even with

23 "optimal treatment" the likelihood of symptom improvement over the next 12 months was "low"

24 resulting in the following limitations: (1) ability to perform simple and repetitive tasks is poor,

1    ability to perform detailed and complex tasks is poor, and ability to perform work activities on a

2    consistent basis without special or additional instructions is also poor; (2) ability to perform work

3    duties at a sufficient pace is likely poor; (3) ability to maintain regular attendance in the

4    workplace and complete a normal workday without interruptions is likely poor, and; (4) ability to

5    interact with coworkers and superiors and the public and adapt to the usual stresses encountered

6    in the workplace is poor. AR 946-947.

7        The ALJ found Stramschror's opinion to be "partially persuasive" insofar as

8    Stramschror's consultative examination supported limitations in Plaintiff's ability to perform

9    complex tasks with limited ability to interact with others. AR 26-27. However, the ALJ stated

10   that "the examination itself and the treatment records discussed herein do not support a finding

11   that the claimant cannot perform simple tasks or keep up with those tasks." *Id*. The ALJ noted

12   that Stramschror found Plaintiff's effort on the examination was "somewhat poor as was his

13   attention" and explained that the only evidence to support Stramschror's opined limitations was

14   Plaintiff's self-reported activities of daily living, yet "the majority of information [Plaintiff] has

15   told his mental health doctors supports the idea that he can perform tasks at home like cook

16   meals and take care of children." AR 27. In addition, Stramschror pointed to Plaintiff's self-

17   reported work history as his reason for opining that Plaintiff could not maintain regular

18   attendance in the workplace and complete a normal workday without interruptions. *Id*.

19       Plaintiff argues this finding is "unduly vague" and not supported by substantial evidence,

20   citing mental health treatment notes Plaintiff purports to show "waxing and waning of

21   symptoms". Dkt. 9 at 4-8. Finally, Plaintiff claims the ALJ erred by finding Plaintiff's ability to

22   care for children undermined Stramschror's opinion because "the record does not support a level

23   of involvement that undermined [] Stramschror's opinion" as "the same records that reference

24

1    outings with the children also describe ongoing mental health symptoms" like irritability,

2    anxiety, and anger management issues. Dkt. 9 at 8-10.

3         Defendant responds that the ALJ reasonably concluded that Stamschror's opinion was

4    partially persuasive but lacked supportability and consistency. Dkt. 15 at 4 (citing 20 C.F.R. §§

5    404.1520c(a), (b)(2)). With respect to supportability, Defendant contends that Stamschror's

6    opinion that Plaintiff could not perform simple tasks, keep up with simple tasks, and work at a

7    sufficient pace was not supported by his examination as Stramschror observed that Plaintiff

8    exhibited "somewhat poor attention" and needed to be redirected, which is "compelling"

9    evidence that a claimant's limitations are not as severe as alleged. *Id.* (citing *Thomas v.*

10   *Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)). And yet, Defendant points out that the tests related

11   to his concentration still revealed largely normal findings. *Id.* (citing AR 26-27, 945-946). For

12   instance, while Plaintiff would not attempt serial subtractions, he could say the months of the

13   year backwards, complete a three-step command, and spell WORLD forwards and backwards.

14   *Id.* (citing AR 946). In addition, Defendant argues the ALJ correctly concluded that the largely

15   normal examination findings did not support Stamschror's opinion that Plaintiff would have poor

16   ability to perform even simple tasks at a sufficient pace. *Id.*

17        As for consistency, Stamschror's opinion that Plaintiff could not perform simple tasks or

18   work at a sufficient pace was accurately determined by the ALJ to be inconsistent with treatment

19   records and Plaintiff's activities of daily living such as cooking meals and taking care of

20   children, according to Defendant. Dkt. 15 at 5 (*citing* AR 27; 20 C.F.R. § 404.1520c(2)(c)(2)).

21   Referencing the ALJ's uncontested rejection of much of Plaintiff's testimony, discussed above,

22   Defendant argues this finding was also based on substantial evidence of Plaintiff's grossly intact

23   cognition, fair to good insight and judgment, and organized, appropriate, and/or goal directed

24

1    thought content (AR 21, 25-26, 552, 638, 909, 918, 1000); Plaintiff's reports to mental health

2    providers that he enjoyed cooking for his family and often did so (AR 21, 578, 712, 1106), and;

3    Plaintiff's custody and care of his children and his girlfriend's children, including regular family

4    activities of fishing and crabbing (AR 21, 501, 580, 586, 625, 968). Dkt. 15 at 5.

5         The Court finds as follows: First, as discussed at the outset of this opinion, because

6    Plaintiff did not object to the ALJ's rejection of his testimony he has waived any argument

7    premised on the validity of his subjective reporting.

8         Second, the Court finds the ALJ reasonably concluded that Stamschror's own

9    examination did not support all of his opined limitations. AR 47. On the one hand Stamschror

10   found Plaintiff's "effort" on the examination was "somewhat poor as was his attention", that

11   Plaintiff had an active Alcohol Use Disorder with a history of alcohol-related problems including

12   "a couple of DUI's" and "several domestic violence charges", and yet Stamschror credited

13   Plaintiff's self-reports regarding his symptomology, daily activities, social functioning,

14   concentration, persistence, and pace, and employment history, repeatedly writing in the narrative

15   portions of his evaluation that Plaintiff "endorsed" the limitations Stamschror ultimately

16   credited. AR 943-945. Thus, the ALJ's finding that Stamschror essentially adopted Plaintiff's

17   unreliable self-report was based upon substantial evidence.

18        Finally, the Court also concurs with Defendant that the ALJ correctly concluded

19   Stamschror's opinion was not consistent with "the majority of information [Plaintiff] has told

20   his mental health doctors" or with his generally benign symptomology during the relevant

21   period. AR 27; *see also*, AR 21, 25-26, 501, 552, 578, 580, 586, 625, 638, 712, 909, 918, 968,

22   1000, 1106. Accordingly, the Court finds the ALJ's assessment of Stamschror's opinion was

23   based on substantial evidence and is free of error.

24

1       2.   <u>Anneliese Kraiger, ARNP, PMHNP</u>

2         On June 4, 2021 Psychiatric Mental Health Nurse Practitioner, Anneliese Kraiger,

3 ARNP, PMHNP (Kraiger) filled out a "check-the-box" mental source statement for Plaintiff. AR

4 951-953. Kraiger opined that Plaintiff was markedly limited in the ability to make simple work-

5 related decisions, understand and remember very short and simple instructions, sustain an

6 ordinary routine without special supervision, interact with others, respond appropriately to

7 changes in the work setting, adapt or manage himself, be aware of normal hazards, and take

8 appropriate precautions. *Id*. She opined that Plaintiff was severely limited in the ability to

9 complete a normal workday/week, perform within a schedule, maintain attention and

10 concentration for extended periods, and set realistic goals. *Id*. Finally, Kraiger opined that

11 Plaintiff was extremely limited in understanding, remembering or applying information;

12 maintaining concentration, persistence or pace. *Id*.

13         The ALJ found Kraiger's opinion was not persuasive "as it is not supported by any

14 detailed explanations and is not consistent with the treatment records including the records from

15 the nurse practitioner's own facility." AR 28-29. The ALJ explained:

16         … while [Plaintiff's] mood and affect tend to fluctuate, his insight and judgement
        were generally described at least as fair. Moreover, the **notes throughout the**
17         **record indicate the claimant doing well with medications; taking care of his**
        **children, cooking dinner, taking his girlfriend to work, etc.** While the claimant
18         has stressors and triggers like family issues, there is nothing in the records to
        support marked or extreme limitations.
19
20 AR 28-29 (emphasis added).

        Plaintiff argues these findings are not supported by substantial evidence because (1)
21
Kraiger's opinion is not, actually, inconsistent with the records from her own facility, and the
22
ALJ's "unexplained reference to these examination finding suggests he impermissibly relied on
23
his own interpretation of the evidence"; (2) the ALJ's statement that treatment notes throughout
24

the record indicate Plaintiff was "doing well with medication" is vague and fails to describe his "ups and downs"; (3) performing activities at home is not the same as performing activities outside the home, and in any event the ALJ failed to establish Plaintiff could perform tasks at a "frequency or level that would contradict Nurse Kraiger's opinion", and finally; (4) the ALJ failed to "properly evaluate [Plaintiff's] response to stress." Dkt. 9 at 12-13.

Defendant responds that the ALJ reasonably concluded that Kraiger's opinion was not persuasive based on lack of supportability and consistency. Dkt. 15 at 7-8 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)). Supportability was wholly lacking, according to Defendant, as Kraiger's opinion was provided on a check-the-box form with no accompanying narrative explanation for any of her selected limitations and treatment notes from Kraiger's care team further failed to support her findings, as those notes generally reflect normal findings aside from a depressed mood. *Id*. (citing AR 552, 638-639, 999, 1000, 1008).

The ALJ also correctly concluded that Kraiger's opinion lacked consistency because, Defendant argues, the ALJ pointed to substantial evidence (including several medical opinions that Plaintiff does not challenge) contravening Kraiger's checked-off limitations. For instance, throughout the relevant period Plaintiff experienced stress and anxiety related to his past, his family circumstances, his financial circumstances, and the COVID pandemic, yet he still managed to exercise relatively good judgment, insight, thought content, and behavior. And when he was compliant with doctor's orders Plaintiff consistently showed improvement. Dkt. 15 at 8-12 (citing AR 22, 384, 414, 488, 552, 580, 586, 625, 638, 909, 918, 966, 968, 1000, 1008). Finally, Defendant argues the ALJ correctly determined that Kraiger's checked-off limitations were inconsistent with Plaintiff's activities of daily living previously discussed. *Id*. (citing 22, 66, 50, 384, 414, 501, 580, 586, 594, 610, 625, 968, 977).

1    The Court concurs with Defendant that Kraiger's opinion lacks supportability, and the

2    ALJ pointed to substantial evidence of that. "Supportability means the extent to which a medical

3    source supports the medical opinion by explaining the 'relevant … objective medical evidence.'"

4    *Woods*, 32 F.4th at 791-2. Kraiger did not explain any of her checked-boxes, and as the ALJ

5    found, the objective medical evidence she might have accessed to where she works (though the

6    form she filled out did not indicate she referenced any other evidence) also did not support her

7    opined limitations. *See* AR 28-29, 552, 638-639, 999, 1000, 1008.

8    Since lack of supportability was reason enough to reject Kraiger's opinion, the Court

9    need not address the ALJ's remaining reasons for doing so as even if they were erroneous such

10   error was harmless. *See, Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

11   2008). Accordingly, the Court finds the ALJ's assessment of Kraiger's opinion was based on

12   substantial evidence and is free of harmful error.[1]

13   ### 3. Kimberly Wheeler, Ph.D.

14   On September 26, 2019 Kimberly Wheeler Ph.D. (Wheeler) performed a psychological

15   evaluation of Plaintiff. Wheeler diagnosed Borderline Personality Disorder, Unspecified

16   Depressive Disorder, and Alcohol Use Disorder in sustained partial remission. AR 647-651. She

17   noted that while Plaintiff insisted he had Bipolar Disorder and he "pressed for all the things that

18   had enabled him to get SSI years ago", he presented "little evidence that he experiences

19   mania…[instead] he's describing the affective instability characteristic of borderline

20   personality." AR 650. Wheeler found Plaintiff to be intelligent and cooperative, "though he also

21

22   ─────────────────

23   [1] Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055

24   (9th Cir. 2006); *Molina*, 674 F.3d at 1115.

1  holds a strong sense of disability", "pressed his case repeatedly for how he should be eligible for

2  SSI", and "underestimates his capacity for eventually returning to work." *Id*.

3        Wheeler opined that Plaintiff had moderate limitations in the ability to perform routine

4  tasks without special supervision, communicate and perform effectively in a work setting, and

5  maintain appropriate behavior in a work setting. AR 649. Wheeler further opined that Plaintiff

6  had marked limitations in the ability to perform activities within a schedule, maintain regular

7  attendance, be punctual within customary tolerances without special supervision, adapt to

8  changes in a routine work setting, and complete a normal work day and work week without

9  interruptions from psychologically based symptoms. *Id*.

10        The ALJ found Wheeler's opinion to be partially persuasive. AR 29. The ALJ credited

11  Wheeler's "mild to moderate limitations" but found "no support for the marked limitations in

12  adapting or performing within a schedule". *Id*. In particular, the ALJ stated that the record

13  contains "numerous references" to Plaintiff "discussing with his mental health providers that he

14  has been able to keep[] schedules and mak[e] all appointments he has needed to make." *Id*.

15        Plaintiff argues lack of substantial evidence renders the ALJ's finding erroneous as

16  "Wheeler's opinion was based on … her clinical interview and mental status examination

17  testing" and is consistent with treatment notes documenting a range of symptoms as well as

18  missed appointments. Dkt. 9 at 14.

19        Defendant responds that Wheeler's failure to provide any explanation for her opined

20  limitations allowed the ALJ to conclude that her "marked limitations" lacked supportability and

21  were not consistent with Plaintiff's treatment records or activities of daily living. Dkt. 15 at 13-

22  14 (citing AR 28-29, 50, 501, 586, 594, 610, 977, 1043, 1045).

23

24

1   The Court concurs with Defendant that the ALJ correctly concluded Wheeler's "marked

2   limitations" were not supported by her evaluation findings that Plaintiff was intelligent,

3   cooperative, had good insight and judgment, and intact cognitive functioning. AR 29. Moreover,

4   Wheeler's narrative comments, such as Plaintiff "underestimates his capacity for eventually

5   returning to work" are at odds with Wheeler's ultimate functional estimates, as the ALJ stated,

6   which seem to overlook her clear observation that Plaintiff was determined to obtain disability

7   benefits. AR 649. Accordingly, the Court finds the ALJ provided substantial evidence to partially

8   reject Wheeler's opinion and his assessment is free of error.

9   **C. Lay Witness Testimony**

10   On May 23, 2020 Plaintiff's girlfriend Nicole Martin (Martin) completed a Third Party

11   Function Report stating that Plaintiff had nightmares throughout the night and did not do much

12   during the day. AR 381-386. She indicated that Plaintiff drove her to and from work and stayed

13   in his room and slept in between. *Id*. Martin indicated that Plaintiff no longer took good care of

14   his hygiene, no longer socialized (due to his anger issues), no longer cooked, went grocery

15   shopping with her once a month, and could still manage money, but was a lot slower than he

16   used to be. *Id*.  Martin further indicated that Plaintiff did not follow instructions well, estimated

17   that he could pay attention for no more than 10 to 20 minutes, and did not think he could handle

18   stress of changes in routine very well. AR 384-387.

19   The ALJ stated that he found Martin's lay witness statement to be "partially consistent

20   with the objective medical evidence and other evidence" and that she was in a "unique position

21   to observe [Plaintiff] on a regular basis, which does add some persuasiveness to her statements".

22   AR 27. However, the level of limitation she alleged—which the ALJ found to be very similar to

23   Plaintiff's subjective reporting—suffered from the same infirmity as Plaintiff's own testimony,

24   according to the ALJ, in that it was inconsistent with objective medical evidence including

Plaintiff contemporaneous reports to healthcare providers regarding his activity level and functional abilities. *Id.* The ALJ also found Martin's relationship with Plaintiff was "colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [he] alleges." AR 27.

Plaintiff argues the ALJ failed to "specify which objective findings allegedly contradicted [] Martin's testimony" but assuming the ALJ "was referring to the evidence discussed in other portions of his decisions … his finding is not supported by substantial evidence for the reasons discussed in the previous section." Dkt. 9 at 17.

Defendant responds that Plaintiff's argument relies on old case law predating the revised regulations, which no longer require the ALJ to provide specific, germane reasons for rejecting lay witness evidence. Dkt. 15 at 15-16 (citing 20 C.F.R. § 404.1520c(d)(ALJs are "not required to articulate how [they] consider evidence from nonmedical sources" using the requirements that apply to medical opinions)).

The Court concurs with Defendant that the ALJ was not required to articulate how he considered lay witness evidence. *See*, 20 C.F.R. §§ 416.902c (public agency employees are nonmedical sources), 416.920c(d); *see*, *Fryer v. Kijakazi*, Case No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) ("it is clear [ALJs] are no longer required to articulate [lay witness evidence] in their decisions"). Nevertheless, the Court finds that the ALJ did point to specific, germane reasons to reject Martin's testimony. To wit, the ALJ rejected Plaintiff's subjective statements to the extent they were inconsistent with the objective and other evidence (AR 23-29), and found Martin's lay-witness statement effectively echoed Plaintiff's own statements to the ALJ, which the ALJ found to be unreliable (AR 27). Thus, the Court finds no merit to Plaintiff's lay witness objection.

1

## V. CONCLUSION

2

      For the foregoing reasons the Court hereby AFFIRMS Defendant's decision denying

3

benefits.

4

      Dated this 28th day of July, 2023.

5

6

David W. Christel

7

Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24